vs. Texas Department of Criminal Justice, and Lorie Davis. Is the appellant ready to proceed? Yes, Your Honor. You may. May it please the Court. As the Court is aware, our plan today to begin first with the Batson issue, and then move on to the issue dealing with the omitted special issue, and then, time permitting, look at the . . . answer any questions about the Brady claim. However, if there are other issues you'd like me to address or if you'd like me to address those in a different order, I'd be happy to do so. I'd hurry up and start with the one you'd like to start with, if I were you. I'm sorry? I said if I were you, I'd go ahead and start with the one you choose. Well, then, with Gov. Prystash was tried in Harris County, Texas, in 1996. Now, the State and the defense, they did not exercise their strikes during Void Art. Instead, they waited until all the panel members had been interviewed, and at that time, they made their objections. Prystash's attorneys first let the trial court know which Vennari members they would have objected to had they not run out of peremptory strikes. And then, after that, trial counsel said, Judge, in addition to that, Ms. Merchant, who was panelist number 95, and today number 26, is a black female who was struck by the State. Judge, in reviewing the State's strikes, we would like to call to the Court's attention that I believe I can represent to the Court, and the State can correct me if I'm wrong, that every black panelist was stricken from this group. Then, trial counsel named off the names of the other four black panel members that had been struck by the State, those being Guidry, Rogers, Taylor, and Clark. Counsel then continued, so, Judge, if they had 14 strikes, they used five of them, or over one third, against the black panelist. Also, in addition, every black panelist was struck. Trial counsel then moved on and specifically elaborated about his strike with regard to Ms. Latrice Merchant. Trial counsel, you mean the prosecutor? No, actually, trial counsel, defense counsel, before the State gave their race-neutral explanation, trial counsel elaborated on their reason for striking Ms. Merchant. It appears to be almost an attempt to rebut the trial counsel gives this explanation, this further explanation, additional, with respect to Ms. Merchant. Trial counsel said, and we invoke the rules of Batson and the State of Texas to challenge the State's strikes on a racially determined statute. Counsel made it clear, you know, that they were challenging all five of the strikes. At that point, the Court asked the prosecutor for a race-neutral reason. The prosecutor said that Ms. Merchant struck her as someone who already had her mind made up. The Court agreed with that, and then, in addition, offered its own explanation and said, well, she's a banker, and I found that that's consistent with how bankers are in my experience. As we point out in our application, we believe that that Judge Atlas held that the district court hadn't required the State to give a race-neutral reason with respect to the other four jurors because trial counsel did not elaborate on those strikes. And in doing so, the district court held Mr. Prystash to a higher burden than what is required under Batson's first step. I believe that was made clear in the case Johnson v. California. The Supreme Court made clear there that the first step of Batson isn't supposed to be a real laborious thing to do. It's simple and no frills. The first step is you raise the Batson challenge. That is correct, Judge Grace. You believe that eight juror are being struck based on their race. That is correct, Judge Grace. And then the next step really is for the Court to determine whether or not the Court is going to require the other side to give a race-neutral reason for the strike. Isn't that what happens? Yes, Judge Grace. Because the Court could not even require that the other side respond to your challenge. Is that right? If the Court believes that you have not made a prima facie case, and that is exactly what the Court would do, and I think it's clear from the record that that's what the Court did here. They held that the strike with respect to the other four black panel members did not constitute a prima facie case. I think, I mean, there's some troubling things about the statistics you point out on the strikes and some evidence you have that the same reasons, at least some of the reasons they used to strike this black juror were also true of white jurors. But Judge Atlas first found a procedural bar. So why don't you address that before we even look at the merits of the claim? Yes, Judge Costa. In our application, we present three ways that we believe the procedural bar could be overcome, two of which were definitely contained in the petition, one which we believe was otherwise before the Court. The two that were in the petition, we believe that for the very same reasons that the Supreme Court has held that claims that ineffective assistance of trial counsel not being presented in State habeas, State habeas counsel's ineffectiveness in those the same exception should apply to Batson challenges. In addition, as is raised in the petition and mentioned in our application, in the petition we allege that defense — excuse me, direct appeal counsel was ineffective for failing to raise the Batson challenge. Now, one important — I saw that in the petition below, but you only asked for six. In your application for a COA, you only raised six claims, and I didn't see the claim of ineffectiveness of appellate counsel on direct appeal in failing to bring a Batson claim as one of the ones you're seeking a certificate on. I believe the important part of Judge Atlas's holding on the ineffective assistance of counsel with respect to direct appeal counsel is that she found the Batson claim to be without merit. And so I believe that by addressing the Batson issue, we are addressing the most critical part of Judge Atlas's ruling with respect to the ineffective assistance of counsel. But her — she's got a pretty elaborate outline, that portion of her reasoning. Right? She does rest her — the ruling you've just discussed on Reed, which arguably is before the Supreme Court in De'Vea now, correct? But she goes on to drop a footnote saying even if Martinez could be stretched to encompass ineffectiveness as appellate counsel, here you laid no Martinez argument. You didn't make the elements in the first place. Do you remember that footnote discussion at first? I believe I do, Judge Higginson, and I would disagree with that. I believe that in the petition, we allege that state habeas counsel and direct appeal counsel were ineffective with respect to state habeas counsel. We pointed out that all the claims raised in state habeas proceedings were record-based. All but two of them were identical to ones raised on direct appeal. Because state habeas counsel doesn't appear to have conducted any extra record evidence, we believe that state habeas counsel's performance was ineffective, that he was deficient, and that Mr. Pricetash was prejudiced by that deficiency. And that's laid out in the petition. So, respectfully, I would disagree with that. Judge Costa was just adding, in notice of appeal, May 16, 2016, you list seven issues. The only description of Batson error is that the prosecution improperly exercised peremptory challenges. So Texas, in responding, says, one, you didn't brief below or even here ineffectiveness relating to failing to obtain the questionnaires. That wasn't presented to Judge Atlas or even to us in the notice. Well, with respect to the questionnaires, I think it's clear from how things played out with the questionnaires in the court below that any attempt to get the questionnaires most likely would have been futile because of the way the State so much pushed against those efforts. But once you asked for them in front of Judge — I mean, I agree the State wasn't just handing them over, but in front of Judge Atlas on Federal habeas, you filed a — you or whoever was representing the defendant at the time filed a motion, and Judge Atlas granted it, and then the questionnaires were turned over. Now, I know they lost the cards, but why wouldn't the questionnaires then have been turned over in the State appellate proceedings if there were a motion requesting them? Well, by the time Joe Prystash got to State habeas proceedings, the original trial counsel — trial judge, excuse me, Bob Burgett, he was no longer the presiding judge of the 230th District Court. By that time, Judge Belinda Hill was presiding in the 230th. And I think we have in the record at least a suggestion to how Judge Hill would have responded to a request for the questionnaires. On page 203 of the record on appeal, there is a document that is written by a staff attorney of the Office of District Courts for Harris County that — that speaks for Judge Hill. And I believe that document supports a finding that Judge Hill would have been resistant to giving those questionnaires. Now — This is all speculative, but you didn't ask for Judge Atlas to make any of those in front of Judge Atlas that raised this issue about the inability to get the questionnaires on State habeas. Can you — No, there's not. And to the extent — So how do we — I mean, we're at a certificate of appealability stage. Even in a normal appeal, you're stuck with the arguments made below. But isn't that even more the case when we're looking at — is there anything Judge Atlas decided that's arguable so that a COA should issue? And I think there is. I mean, I think with respect to the Director of Appeal Council, I think that claim was sufficiently briefed in the petition. I allege that the Director of Appeal Council was ineffective for not raising the Batson claim — raising the Batson claim, excuse me, properly would have required Director of Appeal Council to get the questionnaires, to attempt to get the summons cards if they had not been destroyed, to attempt to get the seating charts if they had not been destroyed. And those are all things that Director of Appeal Council would have had to have done to effectively raise the Batson claim in Director of Appeal proceedings. I believe when we said Director of Appeal Council was ineffective for not raising the Batson claim, I believe that that encompassed all of those things. But again, where in your certificate — you have a direct Batson claim you're asking us to review, but where in your COA are you asking us to issue a COA on a claim that we have not, Judge Costa? And again, the reason is I believe that the critical part of Judge Atlas' ruling, finding that Director of Appeal Council was not ineffective, is that she found the underlying claim, that being the Batson claim, to be meritless. And so I believe that that claim is properly before this Court. Now, I don't think there's any question that the strike that was made should be sufficient to have found that there was a prima facie case. We list the Price v. Cain case in our brief, Johnson v. California. And I simply just don't think that there's any way to have found that that was not sufficient. At that point, the burden was on the trial court to require the State to give a race-neutral explanation. It did not do that. And so we are left here with a record that is inadequate to review the merits of the Batson claim. But as to Ms. Merchant, there is a record. There is. There is, Judge Higginson. Right. And so that's a finding of fact that she embraced from the district state court that it was a race-neutral. So this would be as to those persons where trial counsel failed to request the state-neutral explanation? Judge Higginson, the finding with respect to panel member Merchant, was a finding of fact. However, I think that Miller L. dictates that when you're considering Batson's third step, whether or not you've proven that there was a discriminatory intent, you have to consider all of the struck jurors together to see if there is any kind of disparity between the way that they were questioned and the others, and to make other analysis. And so I think that even with respect to Ms. Merchant, it's a mistake to consider that in isolation without a comparison from the other four jurors. And again, we cannot make that completely here because their record is not preserved because the state court proceeding So the Batson argument turns back onto the deficiency of the record that you had, all of the aspects of it? It does, Judge Higginson, because we can't satisfy Batson's third prong, I don't believe, with the record that is there. And I think the reason the record is ineffective is because the state court proceeding was inadequate to protect Mr. Prystash's rights under Batson. How are you ever going to prove it if these records are lost? With respect to the juror summons cards and the seating charts, there will be no way to do that. And the actions of the Harris County District Clerk's Office made that so. Miller L. says that Prystash should be able to give the Court statistics on the entire juror panel. In fact, this Court in Woodward said that these statistics are meaningless unless you give the numbers for the entire jury panel. Mr. Prystash can't do that. With respect to the seating charts, there were juror shuffles in Mr. Prystash's case. What relief do you want? I mean, it's extremely unfortunate these records are lost, but it's your burden on Federal habeas to show some type of constitutional violation. How are you going to prove that if you don't have the records to prove that? I believe that the constitutional violation, I believe we are able to show enough with it to show that the State court proceeding was ineffective and it's not entitled to any deference. I believe that what we have shown is enough. I believe that there should be another proceeding and Mr. Prystash should have an opportunity to prove this. Even without the juror summons cards and the questionnaires, laying those aside, and I do think his ability to satisfy Batson's third prong has been hindered by that, and a remedy that would at least be a step in the right direction would be what this court ordered in Price v. Kane, which is for the District Court to have an evidentiary hearing and allow the State to give race-neutral explanations that were not contained in the record. That would at least cure that part of the problem and allow us to make a comparative analysis that we're required to make under Batson's third step. There might not be a and the seating charts. I would hope that there would be, though. I would hope that the Harris County District Court's office can't destroy Mr. Prystash's rights under Batson simply by throwing things away one month after the trial is over. But with respect to the questionnaires, with respect to the missing State reasons, I think that could be cured in the same way that this court cured the error in Price v. Kane. I'll send it back to the District Court for an evidentiary hearing. If there aren't any more questions about the Batson issue, I'd like to move on to the issue dealing with the omitted special issue. Texas Code of Criminal Procedure, Article 37071, Section 2B2, tells the trial court that in cases in which the jury charged at the guilt or innocent stage permitted the jury defendant to find the defendant guilty as a party, the court is to submit to the jury the issue of whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken. The special issue was added by the Texas Legislature in 1991 in response to the Supreme Court cases of Inman v. Florida and Tyson v. Arizona. The Texas Legislature felt this instruction was required to make the findings required by Inman and Tyson. At the time of Mr. Price's 1996 trial, whether you could waive this instruction was a decision that had already been made. It had been made in Powell v. State, which was a 1994 case from the Texas Court of Criminal Appeals. In Powell, the CCA said that a defendant cannot waive one of the special issues that the Legislature has found is necessary to satisfy motion asking that this particular special issue be found unconstitutional because it fails to provide sufficient guidance to the jury in their assessment of the defendant's sentence. Further, the statute requires the jury to find nothing more than they were required to find to convict the defendant of capital murder. In other words, trial counsel's objection to the special issue was that it did not do enough. And because they felt that it did not do enough, that it was unconstitutional, they objected. And it was not included in the verdict form that was presented to Price v. Juras. In other words, they did not have to answer that special issue. How do you get around? Judge Atlas cited Nichols v. Scott and said that our Court has said that there is no constitutional problem with failing to give that party's instruction, given the standard Texas mitigation instructions, that those suffice. With all due respect, I believe that Judge Atlas, at least as I read it, misinterpreted this Court's opinion in Nichols and also the Jacobs case, which is mentioned in a footnote after the Nichols case. Both Nichols and Jacobs dealt with cases that were tried before 1991. And so there were different special issues at play there. The first special issue under that regime asked whether or not the defendant acted deliberately and with reasonable expectation that a death would occur. The second special issue under that regime is similar to the future dangerousness one that's present in today's scheme. What this Court held in Nichols is that a failure to give the anti-party's instruction in the guilt phase charge was not error under Inman Tyson because the jury, under these two special issues that were present in that regime, had to make those determinations. It allowed the jurors to consider those items. We're talking about a different issue here. You see, in Nichols and in Jacobs, the special issue that would have required the jury to make the findings that are required of Inman and Tyson was present. In Mr. Prystash's case, it was not. Mr. Prystash's jurors did not have to, when deciding whether or not he should be sentenced to death, they did not have to make the findings required by Inman and Tyson. And Ring and Apprendi inform us that those are findings that must be made by the jury during the guilt phase beyond a reasonable doubt. And that simply did not happen. The CCA, for the first time, during, in its opinion, on Mr. Prystash's direct appeal proceedings in 1999, said that you could waive that special issue. The court overruled Powell. Now, Powell, again, was the 1994 case. That was the law at the time of Mr. Prystash's trial. In 1999, in Mr. Prystash's direct appeal proceedings, the CCA directly overruled Powell. But because that was something that was announced for the first time, it cannot be considered an adequate state ground to deny federal review of Mr. Prystash's claim. A law, a state procedural reason for dismissing a claim cannot be adequate, is not firmly established and regularly followed, and cannot be so the first time it is announced. And so while it might be a different answer for cases today, because the CCA, beginning with Mr. Prystash's case and in several others, have said that the invited error doctrine is a reason for finding that these are waivable and is a state procedural ground for not looking at the merits of these claims. While it might be a different answer on cases today, it's not the answer in Mr. Prystash's case. And it's simply not an adequate reason to deny federal review of his claim. There are not any more questions about the special issue claim. I'd like to turn quickly to the Brady claim. Judge Atlas's opinion omits and fails to address one very important aspect of the Brady claim. She focuses solely on the admission of Guidry's confession. What she does not address in her opinion of the court below is whether this would have been strong impeachment evidence for Prystash's attorneys to use as his trial. And that is important. We know that impeachment evidence is evidence that is to be considered in the Brady analysis. Was that argued below? Yes. Yes, Judge Costa. When she says the overwhelming proof came from aspects of evidence that would have been independent of this, she's looking at the girlfriend or there would have been impeachment there. Phone records, the car, the gun. None of that would have been implicated. So your focus is, was Detective Valerio, did he take the confession? How would there have been any impeachment value even getting in his own statements to Detective Valerio? Well, in order to have even arrested Mr. Prystash, there had to have been an affidavit. That affidavit was sworn to by Detective Roberts. Now, Detective Roberts was one of the people that was involved in the Guidry confession. In fact, it was Detective Roberts who Judge Gilmore, who decided Guidry's case in the district court, found to be the most problematic. He had testified at one hearing that they did not know that Mr. Guidry had an attorney and then later that he did. And Detective Roberts was crucial to Prystash's case. In addition, Billingsley, I believe he was a sergeant, Sergeant Billingsley was important in Guidry's confession. Sergeant Billingsley oversaw Detectives Roberts and Hoffman. But what I thought Judge Atlas was focusing on to distinguish this from the other two people were that the girlfriend and Valerio had no connection at all to the Guidry evidence and they did give his own statements in order to incriminate. But I think Judge Atlas also relied heavily on Prystash's confession. And if you're going to believe Prystash's confession, and indeed if you're going to even admit it in the pretrial hearing, you have to find Roberts and Billingsley credible. I mean, after all, Billingsley's whole story was that Prystash confessed early to him in a Red Lobster parking lot and then later in writing after they arrested him. His credibility is very important and I think that needed to be considered in the Brady claim. Thank you, Counsel. You may proceed. May it please the Court. The lower court found that Prystash's claims regarding Batson and the jury charge were procedurally barred. The lower court also found that his claims concerning prosecutorial misconduct, Dr. Cajano's testimony, and the unadjudicated extraneous offenses did not overcome the rigorous standard of AEDPA. Prystash now fails to show that reasonable jurists would debate the lower court's disposition. Therefore, this court should deny a COA. Turning first to the Batson claim, there is no question that he procedurally defaulted the claim in state court. Prystash asserts that cause, at least under Coleman, would be satisfied by not having the juror questionnaires. However, he fails to point to circumstances external to himself needed to show cause. He necessarily had the questionnaires during Vordeyer and he does not detail what happened to the questionnaires after trial was or he does not explain why counsel didn't have them on direct appeal or state habeas and even if why trial counsel maybe didn't turn them over. But even assuming arguendo that neither direct appeal counsel nor state habeas counsel had them, they could have, pursuant to Texas law, gone and filed a motion with the district court asking for a copy of the questionnaires from the district clerk's office where they are housed. Now, he further would exploit Martinez and the holding there by saying that state habeas counsel's and direct appellate counsel's actions amount to ineffectiveness. But this court's precedent and the Supreme Court precedent is clear that Martinez applies only to claims regarding ineffectiveness of trial counsel. But that's an open question, at least as to appellate counsel, this spring. Your Honor, that's correct. However, even whatever the would not affect this case because before that court is the question of whether or not state habeas counsel's ineffectiveness can serve as cause for not bringing a claim of ineffective assistance of appellate counsel. And as Judge Costa noted, that particular claim is not before this court. It was raised below in front of Judge Atlas, though. Yes, it was, Your Honor. A claim of, a general claim of ineffective assistance of appellate counsel was raised before Judge Atlas. In connection with Batson, she mentions it. It was one of, Batson was one of the claims. They list kind of a series of claims. Batson was definitely one of the claims. But as Judge Atlas noted, that was about a two-paragraph statement, and Judge Atlas found that to be a very conclusory allegation of ineffective assistance of appellate counsel. However, before this court, there is no issue of ineffectiveness of appellate counsel. Merely, they've couched it in terms of Martinez to somehow save the Batson claim, which it cannot. Further, he simply cannot demonstrate prejudice to overcome the procedural bar because he offers only a bare-bones claim. Now, the record is clear that during Vordire, when trial counsel lodged their Batson challenge, they lodged it with regard to Ms. Merchant. They then go on to blackvenire members because Ms. Merchant was the last of the five blackvenire members struck. Why on just that one jury, even Ms. Merchant, isn't it arguable because her answers, the numbers she gave on giving the death penalty in this situation of someone who's not the triggerman, were similar to a number of white jurors. In fact, were more supportive in some instances than white jurors who were kept on the jury. That certainly is true. She did give a number. I believe it was seven. Another white jury member gave five. However, the particular issue they had, that the State proffered at least with her, one of the issues was that she was wishy-washy in terms of whether or not she could give the death penalty with regard to... But then it doesn't seem credible because then they also said they struck her because she makes up her mind. She's so decisive that she makes up her mind. So you've got, in the same breath, the prosecutor saying she's wishy-washy, yet she makes up her mind too early. Well, I believe there, Your Honor, what the prosecutor was talking about, and it's also made clear in what the trial court said, is that she seemed to have her mind made up already on certain issues. However, when it came to the questions regarding this particular issue about whether or not she could give the death penalty to the middleman in a murder-for-hire scheme, that the... And if you look at the questions, she does seem to kind of never be able to commit when the State really tries to push her to commit one way or the other. Further, this Court's law gives strong deference to the trial court's ruling here because he was in the best position to make the important credibility determinations central to this question. Moreover, this Court has also made clear that the State's proffered... In that connection, what was the determination? That I don't need to require that they give race-neutral reasons or that I'm not going to ask about race-neutral reasons for the other African-American venire members because you didn't raise it? What was that determination by the trial judge? I believe that it was the second, Your Honor. All right. The trial court, once they've lodged their Batson challenge to Ms. Merchant, the trial court then expressly asks trial counsel, so your Batson challenge is to Ms. Merchant, and their quote back to the court is, it is her we are appointed to. The State... The trial court then asks the State for its race-neutral reasoning, which is all with respect to Ms. Merchant. The trial court then overrules the objection, again specific to Ms. Merchant, and the trial court asks trial counsel anything else we need to get on the record, to which trial counsel said, I don't think so. So your contention is that the judge dealt with the only juror about which they explicitly complained... Correct. Which was Ms. Merchant. Correct, Your Honor. Required the race-neutral reason and then determined that it was sufficient. Correct, Your Honor. And indeed, that's why price is simply not applicable here. Price is distinguishable because there, trial counsel only made a general objection, and the trial court found that that general objection was not enough to make a prima facie case for which to require the State to respond. However, here, as you just pointed out, Judge Graves, the trial court found that, or indeed asked specifically trial counsel, is this objection with regard to Ms. Merchant, trial counsel said it is her we are appointed to, and then asked the State for the race-neutral reasoning. This Court's precedent also makes clear that the State's reasoning does not need to be persuasive, especially in the far-removed proceedings of federal habeas review. It merely needs to be honest, and it needs to be race-neutral. Turning now to the jury charge question, the doctrine of invited heir, the bar that was established in this country's jurisprudence, this Court has repeatedly upheld Texas' application of that doctrine as an adequate State procedural bar. And both State and federal courts have routinely applied this bar to jury charges in criminal trials. That the CCA applied the bar here, overruling the fairly flawed case in Powell, does not render that bar inadequate. Indeed, in Coleman, the Supreme Court stressed that the adequacy question is grounded in concerns of comity and federalism. And there the Court said that the State has a dignitary interest in seeing that their State law decisions are not ignored by federal habeas courts. To disregard the application here would undermine the CCA's interest in course-correcting and overruling what it called a fatally flawed case. The Supreme Court then in Kindler noted that a contrary holding would pose an unnecessary dilemma for the CCA, or rather, it would pose an unnecessary dilemma for the State courts. Here, for the CCA, that dilemma would be course-correcting and overruling bad precedent, but at the expense of the finality of their own judgment, or preserving the finality at the expense of allowing bad precedent to stand. The Court also noted in Kindler that it would seem particularly strange to disregard State procedural rules that are substantially similar to those to which we give full force and effect in our own courts, even stranger to do so with respect to rules in place in nearly every State, and all at one fell swoop. Do you have any cases where the State court, like it did here, basically reversed course in how it applied a procedural bar and a Federal court addressed on habeas, whether that was adequate? I do not, Your Honor. But more importantly, neither does Price-Dash. But the question — we're only at a COA stage. As the Supreme Court recently reiterated, the only question before us is whether it's debatable by reasonable jurors. So why isn't that procedural question at least debatable, even if you ultimately win on it? Because, Your Honor, I think that the important question — the first important question is what was the bar? And the bar was the invited-to-error doctrine. That bar is unquestionably adequate unto itself. Then the second question becomes, does the fact that it was applied here deprive it of that adequacy, the way that it was applied here? Does it deprive it of adequacy? And using the concepts mentioned — or using the concepts mentioned in Kindler, no, it doesn't, Your Honor. It simply doesn't. Does the State think that the Buck decision was requiring us or telling us to change the way we — the threshold we use at the COA stage? No, Your Honor. In fact, Chief Justice Roberts was clear that the Court used the correct standard, the standard in Miller L that is very familiar to this Court, that they used the correct standard. And, indeed, Justice Thomas in his dissent said, today's decision has few ramifications, if any, beyond the highly unusual facts presented here. The majority simply disagrees with the courts below over the application of the governing standard. The majority does not announce any new standards or suggest that the District Court or the Fifth Circuit applied the wrong standard altogether. So it's clear from the decision that the standard remains in place. Turning back to Kindler and the way that it discussed what the Federal Courts do and what other State courts do as important in determining or at least examining the adequacy of a State procedural bar, that's, indeed, what the CCA did here in Prystash. If you read the opinion, they detail not only Texas' use of the independent — or, excuse me, of the invited error doctrine in terms of jury charge error, but they also looked at what other States did and, indeed, what the Federal Courts did. Powell — after Powell was decided, it was used only once to determine the same issue. The holding was used only once to determine the same issue. And then the CCA, over the next five years, proceeds to distinguish Powell over and over as they apply the jury charge — or, excuse me, the independent — or the invited error doctrine to the jury charge, to other aspects of the jury charge. When Prystash came along, it was the perfect set of facts for them to overrule, again, what they called a fatally flawed case. Since Prystash, they've used that holding 19 times — at least 19 times — to apply the invited error doctrine to not only the jury charge, but also to other areas of the trial. So, indeed, in Texas, Powell is the oddity. Prystash is the law. The invited error doctrine itself is more than adequate to bar consideration of this claim. Nothing about the CCA's application of an M. Prystash's case deprives it of that. What about the merits? Because Judge Atlas found a procedural bar, but then she also said it fails on the merits, right? Yes. Turning to the merits, again, as was discussed, this Court has previously rejected constitutional claims based on the lack of an anti-parties charge, and this Court noted that Nichols v. Scott was discussed in Judge Atlas's case. Now, certainly Nichols v. Scott was an application, or at least examining the pre-1991 statute, and the jury — or the special issues there. But the special issue — important to note is that when the special issue changed, the — I think the holding in Scott applies — excuse me, the holding in Nichols v. Scott still applies here, because the special issue that this jury was given, in particular the mitigation special issue, was whether taking into consideration all of the evidence, including the circumstances of the offense. That's where it starts. And, indeed, that was trial counsel's theory here on — during punishment phase, and it's the theme that they pressed over and over during their closing arguments, that the circumstances of this case were that Prystash was the middleman. He was not the evil ex-husband who wanted his wife killed, and he was not the evil gunman who actually pulled the trigger and shot the woman. He was simply the middleman, and for that, jury, you should spare his life. Ramming those consideration of the events of the offense, ramming them into the jury over and over and over so that they could give full effect and consideration to it, and, indeed, they were given the question — they were given a question to which they could. Turning to Prystash's Brady and Giglio claims, as Prystash noted, both Frauda and Gidry's have been overturned because of Gidry's confession. However, this case stands apart for a very significant reason, because the state here relied on a tripod of independent evidence apart from Gidry's confession. That was Prystash's own written confession, his oral statements to Sergeant Billingsley, and, importantly, the extensive testimony of Ms. Gipp. Indeed, Gidry's confession played a small role in this case. The statements were, in fact, first introduced by trial counsel when they introduced into evidence the pocket warrants used to arrest Prystash. The State later — A little bit difficult. Some of my difficulty following the brief is you don't cite to the ROA sites. It's a separate document, so it's not as easy to check your assertions. They claim that the Gidry evidence came in first through Sergeant Billingsley. And in your brief, you suggested that wasn't correct. Yes, Your Honor. How does the Gidry evidence first come to this jury's attention? And I believe the ROA sites, or at least the lack of them with regard to the state court records, are — when we downloaded the electronic ROA, the docket sheet certainly indicates that the ROA numbers continue on to the state court records, but they actually aren't present with the ROA electronically. So I do apologize for that. But for that reason, I also only have the reporter's record citations myself. Because their brief had all the ROA sites in it. Yes, Your Honor. And again, I apologize. And I also apologize here because I am going to have to give you the reporter's record sites. What's your memory of the trial? What did — I thought they claimed Sergeant Billingsley brought it up affirmatively in the government. And that would be incorrect, Your Honor. During the cross-examination of — well, let me put it this way, Your Honor. I believe that the trial counsel was absolutely the first ones to introduce the statements into evidence, but they did not ask about the statements, to be fair. So when Detective Roberts is on the stand during cross-examination, they introduced the pocket warrants. Trial counsel introduced the pocket warrants. And those pocket warrants contained the statements from Gidry. So in effect, those statements were now before the jury. But that happened not in the prosecution's case in chief. No, it did, Your Honor. In the prosecution's case in chief. Yes, Your Honor. It's in reporter's record, volume 18, page 469 and 470, and the state's exhibits were states exhibit 96 and 97. In the case in chief, but on cross-examination. Yes, Your Honor. Their argument isn't really just limited to Brady Giglio. Their argument is that at least in closing and during trial, the evidence came in and was then characterized as having been a voluntary confession by Gidry. Yes, Your Honor. Because in fact, you should have interjected and said that's not true. It was involuntary. So yes, Your Honor, that indeed is their claim, is that — The answer Judge Atlas has given is, well, that wouldn't even on the lowest level of materiality have affected it because we heard independently his voice through his girlfriend, his voice through Detective Valerio. That is correct, Your Honor. And am I right that Detective Valerio took the confession of this defendant? That is correct, Your Honor. And he had nothing to do with the wrongful conduct as it related to Gidry? Again, correct, Your Honor. Okay. And I believe that Ms. Gibbs' testimony is extremely important here because her testimony spanned about 51 pages of the record. And through her testimony, they were more than able to prove all the elements necessary for murder for hire, including the remuneration aspect. And it's important to note, Your Honors, that when this Court affirmed the overturning of Gidry's confession, that the district court in Gidry's case and this Court noted that once you took away Gidry's confession, Gibbs' statements became hearsay, and the materiality of those statements in Gidry's case was extreme, such that— The fact that she wrote down for the gun, was that offered into evidence in this case? Your Honor, I do not recall — the fact that she wrote the serial number down was involved. I do not recall if the actual number itself was involved, but there was absolute testimony linking the gun that Gidry had in his possession to the gun that was used. So, indeed, the lower court found that not only did the testimony prove conclusively that being the testimony from Gibbs, the testimony of Prystash's own confessions, both the oral statements he made and the lengthy written confession, that they proved his part in the murder for hire scheme, but also the lower court found that Gidry's statements were wholly cumulative of this evidence. Now then, moving on to Prystash's claims that he did not address here, but because they are before the Court on COA, first to Dr. Cano's testimony. Prystash complains that the trial court and lower court violated the holdings in Eddings and Barefoot by limiting Dr. Cano's testimony. However, nothing in those cases say that — they don't stand for the proposition that any testimony may come before a jury absent rules of evidence. Indeed, here, the trial court allowed Dr. Cano to testify that the prison system could manage Prystash on prison resources, and indeed, to his ultimate opinion regarding Prystash's future dangerousness. But based on Dr. Cano's own statements to the court that he had no personal knowledge regarding the prison classification system, and on findings that any statements he made about that would be inadmissible hearsay, the trial court properly limited his testimony in that regard. This was simply a state court making a decision based on state evidentiary law, and Prystash fails to show that that decision was such to render his trial fundamentally unfair. Finally, Your Honors, Prystash's claim regarding unadjudicated extraneous offenses is clearly procedurally barred. As a CCA held, he failed to preserve error by not objecting during trial, nor requesting a limiting instruction. Now, that bar is still in play, and it is still properly before this court, but the lower court simply found that this court's precedent clearly forecloses that issue, and indeed, this court has even said that to determine such would be a new rule of law barred by Teague. Prystash simply fails to show that reasonable jurists would debate the lower court's disposition regarding his procedurally defaulted and otherwise meritless claims. Therefore, this court should deny his COA application. Absent any further questions, I cede my time back to the court. Thank you, counsel. Thank you. Rebuttal. On the question of not including ineffective assistance of direct appeal counsel and the state habeas counsel in our request for a certificate of appealability as separate applications, for us, these are facts that support a claim. COAs are for claims, not for facts supporting claims, and to us, the ineffectiveness of state habeas counsel are facts supporting a claim, specifically supporting our Batson claim and whether there is cause to excuse the default. Counsel mentioned that we don't know what happened to the questionnaires after trial. In fact, I think the record provides us with an explanation of what would have happened to the questionnaires after trial. Again, I would refer the Court to page 203 of the record on appeal. This is the statement from Judge Hill, and there she says that immediately after trial, all of these questionnaires are gathered together. So I think we do know what happened to the questionnaires after trial. With respect to the Batson claim and the four jurors that the State did not have to give a race-neutral explanation to, the State's argument here seems to be that by using the anything else that Mr. Prystash waived his Batson claim with respect to the other four jurors, that there is simply no case that that holds that you can waive Batson at that stage. I believe I only found one case in which this Court has addressed a similar situation, and that was the case of Rivers v. Thaler, which was 389 of the Federal Appendix 360. I believe this was in footnote 4. Now, to be clear, this was not the holding of Rivers. The holding of Rivers was that he had not satisfied, he had not made a prima facie case. But the Court did suggest that another reason to deny him a COA on the claim is that when the State attempted to give a race-neutral explanation, Rivers objected. And so Rivers took an affirmative step to prevent the State from doing what was required. There's simply no case that holds, absent taking some affirmative step, Mr. Prystash could have waived his Batson claim. Batson is clear. Once he has made a prima facie case, the burden then shifts to the State to provide a race-neutral reason, and the trial court is to require the State to give that race-neutral reason. Anything that would hold that Prystash had more of a burden than that after making a prima facie case would go against Batson. With respect to the omitted special issue claim, the State argues as if Powell interrupted what otherwise has been a consistent jurisprudence that the invited error doctrine can serve to dispose of claims such as Mr. Prystash's. That is not the case. In Mr. Prystash's case, in direct appeal opinion, the CCA had to reach all the way back to 1906 to Carball v. State to support its finding that the invited error doctrine is a reason to dismiss a person, a defendant's claim. Carball has been cited exactly once since 1949, and that is Prystash's case. The CCA also cited a 1987 opinion, Livingston v. State. Livingston, too, is separate from Prystash's. Livingston had to do with whether or not it was air when defense requested an additional special issue, one that had not been called for by the evidence, and the trial court gave it. So that is different. There is simply no case before Prystash's that held that the invited error doctrine is a grounds to dismiss a defendant's claim for waiving for a special issue not for being omitted. And Nichols, again, is not the same issue. Neither is Jacobs. The issue there is whether or not an omitted instruction during guilt phase could cause error under Inman v. Tyson. That is not what happened here. Here we are talking about an omitted issue in punishment. You see, in Nichols and in Jacobs' case, they still had to make that consideration at punishment, and they had to do that because the important special issues were presented to their jurors. The important special issue was not presented to Mr. Prystash's jurors. Thank you. Thank you, counsel. The court will take this matter under advisement. We stand adjourned.